**Charles T. MUNGIN, Plaintiff,**

v.

**Doris S. STEPHENS and Rachelle L. Strausner, Defendants.**

**Civ. A. No. CV495–050.**

United States District Court,
S.D. Georgia,
Savannah Division.

Nov. 7, 1995.

Charles T. Mungin, Ware C.I., Waycross, GA, pro se.

Thomas J. Mahoney, Jr., Emily Elizabeth Garrard, Savannah, GA, John C. Jones, Neal B. Childers, Matthew Peter Stone, Atlanta, GA, for defendant.

## ORDER

ALAIMO, District Judge.

Plaintiff Charles T. Mungin has filed objections to a Report and Recommendation issued by the United States Magistrate Judge recommending the dismissal of his claims against both defendants, Doris S. Stephens and Rachelle L. Strausner. After conducting a *de novo* review of the entire record, the Court concurs with the recommendation that Strausner be granted summary judgment as a matter of law. The Court differs, however, with the magistrate judge's recommendation that Mungin's claim against defendant Stephens be dismissed as a sanction for discovery abuse.

## FACTS

Plaintiff, who is proceeding pro se, was granted leave to proceed *in forma pauperis* with this civil rights action on February 27, 1995. Plaintiff claims that the defendants have interfered with his right of access to the courts by intentionally obstructing the progress of a state habeas corpus action that he commenced in 1993.

It appears from plaintiff's complaint (as amended) and other numerous filings that he was convicted and sentenced in July 1993 in Dougherty County, Georgia for possession of cocaine with intent to distribute. During late 1993 plaintiff began to request documents from the Dougherty County Superior Court relating to his conviction. While incarcerated at the Coastal Correctional Institution in early 1994, plaintiff filed a petition for writ of habeas corpus with the Chatham County Superior Court. *Charles T. Mungin v. David Thompson,* CV94–0051–B (Chatham County Super.Ct.1994). Plaintiff was subsequently transferred to the Ware Correctional Institution, where he currently resides.

During the course of his state habeas action, plaintiff endeavored to obtain certain records of his criminal conviction, including transcripts of the various criminal proceedings, and requested a hearing before the court to consider the merits of his petition. When his efforts proved unsuccessful, plaintiff filed this suit alleging that the defendants had conspired to prevent him from exhausting his state habeas remedies. Upon conducting its initial review of the complaint, the Court advised the plaintiff that he had not stated a colorable claim for relief against several of the named defendants and afforded him an opportunity to amend his pleading if he desired to proceed against these individuals. Specifically, the Court determined that David Thompson, the Warden of the Coastal Correctional Institution, was not alleged to have done anything to deny plaintiff access to the courts and that Superior Court Judge Perry Brannen was clearly entitled to absolute immunity for his judicial acts.

The Court did find, however, that the plaintiff had stated at least a rudimentary claim against two defendants: Rachel Strausner, the Georgia Assistant Attorney General who represented the State in the habeas corpus proceeding, and Doris S. Stephens, the Clerk of the Chatham County Superior Court. In his "Supplemental Complaint," the plaintiff claimed that these defendants had "mishandled" his habeas application by preventing his various motions from being placed on the docket for judicial review, denying him access to the records and transcripts necessary to establish the violation of his constitutional rights, and preventing his case from being set down for a hearing. As a result of this conspiracy, plaintiff's habeas case lingered on the docket for over a year without being addressed on the merits.

Construing the complaint most favorably to the plaintiff, *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the Court directed service upon defendants Strausner and Stephens. The Court later imposed monetary sanctions against the plaintiff for his failure to cooperate during the taking of his deposition by counsel for defendant Stephens. When plaintiff failed to pay any portion of the sanctions, defendant Stephens filed her motion to dismiss. Defendant Strausner then filed her motion for summary judgment.

## DISCUSSION

### I. STRAUSNER'S MOTION FOR SUMMARY JUDGMENT

In support of the motion for summary judgment, defendant Strausner furnished an affidavit acknowledging that, as an Assistant Attorney General, she was assigned the state habeas petition filed by the plaintiff. Strausner further acknowledged that she has occasionally been asked by judges to prepare proposed orders. However, Strausner affirmatively denied that she had prevented plaintiff's habeas application or any of his motions from being placed upon the superior court's calendar for a hearing or that she had otherwise deprived the plaintiff of access to the courts. Strausner pointed out that she had no control over the scheduling of cases, since the calendaring of cases is a matter exclusively reserved to the court. Any proposed orders prepared by Strausner setting hearing dates were done at the court's direction and submitted for its review, and the court was free to accept or reject the proposed orders as it saw fit. Strausner denied conspiring with anyone to prevent plaintiff's case from being heard and further denied that she had deprived plaintiff of access to any documents or records of his criminal case, noting that she had no legal duty to provide him with such materials.

In response, the plaintiff argued that the defendant's motion for summary judgment

was "premature" since there was an unresolved discovery dispute over matters that were essential to the presentation of his case. Specifically, the plaintiff pointed out that he had yet to receive the transcripts and other records of his criminal case. Without these documents, plaintiff suggested that he lacked the necessary information "to ward off summary judgment."

■ Summary judgment is appropriate if the evidence before the court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of establishing that there is no triable issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The moving party may meet that burden by presenting evidence which, if uncontradicted, would entitle it to a directed verdict at trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). It then becomes the nonmoving party's burden to present specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). In discharging this burden, the nonmoving party may not rest upon the mere allegations of his complaint but must "go beyond the pleadings" and point to evidence in his own affidavit or in the depositions, answers to interrogatories, and admissions on file that would be sufficient to support a verdict in his favor if proved at trial. *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553; *Matsushita Electric Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). A party claiming that it cannot present specific facts essential to its opposition to a summary judgment motion without additional discovery must satisfy the court that further discovery is likely to produce such facts. Fed.R.Civ.P. 56(f). Additional time for discovery need not be granted if it does not appear plausible that the proposed discovery will yield material facts. *Barfield v. Brierton*, 883 F.2d 923, 931–32 (11th Cir.1989).

■ Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. at 317, 106 S.Ct. at 2548. Plaintiff has pointed to no evidence in the record that contradicts the facts set forth in the sworn affidavit of defendant Strausner. Rather than challenging defendant Strausner's sworn statements, the plaintiff has merely suggested that summary judgment is inappropriate because he has yet to obtain complete responses to the discovery requests that he served upon the defendants. This argument, however, is unavailing.

The plaintiff has sought from the defendants the same materials that he claims were denied to him during the course of his state habeas proceeding, namely, all records and transcripts generated during the handling of his criminal case. As a preliminary matter, the plaintiff has not shown that the records of his criminal case—which arose in Dougherty County—are in "the possession, custody or control" of either defendant, Fed. R.Civ.P. 34(a), and the defendants have denied they are in possession of the records sought by the plaintiff. More fundamentally, the plaintiff has not shown what bearing the records of his *criminal* case could have on any issue relevant to this civil proceeding. The records of the criminal case were, quite obviously, generated before the filing of the plaintiff's state habeas petition and therefore relate to matters which occurred prior to any of the allegedly improper acts committed by defendant Strausner. It is undisputed that defendant Strausner had nothing to do with the plaintiff's criminal case and did not come into the picture until she was assigned the state habeas case. Everything in the records of the criminal case from Dougherty County *predates* Strausner's involvement with the plaintiff. Those records, therefore, are simply irrelevant to the issues plaintiff has raised in the instant complaint.

The Court understands that the plaintiff desperately wants to see the records of his criminal case, and it appears that, in the proper context, he is entitled to review those records. The plaintiff has failed to show that there is anything in the records of his criminal case (which was closed before Strausner ever became involved with the plaintiff) that

could possibly demonstrate that Strausner conspired to deny plaintiff access to the courts during the later habeas proceeding.

It is apparent from his complaint and other numerous filings in this record that the plaintiff is exceedingly distraught about the delay in the processing of his state habeas petition. And it is understandable that the plaintiff—who is untutored in the law—would find the attorney who handled the State's case an attractive target of his wrath. But the plaintiff has produced not one shred of evidence to suggest that defendant Strausner was participating in a scheme to deny plaintiff a hearing or to prevent his motions from being filed or considered by the court. Nor has he shown that the records of his criminal case will contain such evidence. Even assuming inordinate delay in the processing of plaintiff's state habeas action, he has offered no evidence that this defendant caused or in any way contributed to that delay.

Where, as in this case, a motion for summary judgment is made and supported according to Rule 56, the nonmoving party must go beyond the pleadings and set forth specific facts showing a genuine issue for trial. "If the party's response consists of nothing more than a repetition of his conclusory allegations, the district court must enter summary judgment in the moving party's favor." *Barfield v. Brierton,* 883 F.2d 923, 934 (11th Cir.1989). The plaintiff has failed to show how the additional discovery which he seeks will yield material facts creating a genuine issue for trial. Accordingly, defendant Strausner's motion for summary judgment is hereby **GRANTED.**

## II. STEPHENS' MOTION TO DISMISS

The magistrate judge has recommended the dismissal of plaintiff's complaint against defendant Doris Stephens because of his failure to pay a monetary sanction imposed following his refusal to cooperate during the taking of his deposition. While the Court recognizes that dismissal is an appropriate sanction for discovery abuse by a pro se litigant, even one who is proceeding *in forma pauperis,* it believes that the magistrate judge was somewhat hasty in suggesting dismissal on these facts.

Early in this case, the magistrate judge granted the defendants leave to take the deposition of the incarcerated plaintiff and instructed the plaintiff regarding his duty to cooperate fully in discovery and, specifically, to "permit his deposition to be taken." Order of February 27, 1995. The Order admonished the plaintiff to answer any questions seeking information relevant to the subject matter of the pending action or face sanctions, including the dismissal of his case. On May 3, 1995, just a week after filing her answer to the supplemental complaint, defendant Stephens noticed the deposition of the plaintiff at his place of confinement in Waycross, Georgia for May 18, 1995. Counsel for the defendant made arrangements for a court reporter and traveled from her office in Savannah to Waycross for the taking of the deposition.

At the outset of the deposition, the plaintiff made clear that he did not wish to proceed since he had earlier filed a motion for protective order preventing the taking of his deposition until the defendants had first complied with his discovery requests. Deposition of Charles T. Mungin at 2–3, 23. When counsel stated that she had not been served with any such motion, the plaintiff explained that he had presented his motion for protective order and a separate motion to compel discovery to the prison officials on May 15 for mailing to the Court and to counsel. Dep. at 6–7. When counsel pointed to a notation of May 16 on one of the documents produced by the plaintiff, he emphasized that his only option was to deliver his mail to the prison officials and that he could not control when the officials actually placed the material in the mail. *Id.*

The plaintiff further explained that he had requested discovery from the defendants prior to receiving the deposition notice, that he had yet to receive that discovery, and that he was unable to "effectively and intelligently take a deposition" without the requested documents. Dep. at 10, 21. The plaintiff then conceded that the requested discovery consisted of the transcripts of the criminal proceedings before the Dougherty County Superior Court and that defendant Stephens (the

Clerk of the Chatham County Superior Court) had previously informed the plaintiff that she was not in the possession of those transcripts. Dep. at 11. Plaintiff then proceeded to read verbatim his motion for protective order and motion to compel, wherein he described the requested discovery as the "cornerstone" of his complaint. Counsel's persistent efforts to convince the plaintiff that the requested discovery was not truly pertinent to his claim against defendant Stephens proved unsuccessful. The deposition concluded when the plaintiff made clear that he would not proceed with the deposition until he received a ruling on his motion for protective order and motion to compel. Dep. at 47, 51. When counsel returned to Savannah later on May 18, she discovered that the plaintiff's motion for protective order and motion to compel had arrived at her office earlier that day.[1]

There has been no suggestion by the defendant or finding by the magistrate judge that the plaintiff deliberately delayed the service of his motions until the eve of the deposition for the express purpose of inconveniencing the defendant or her counsel. Nor does the Court gain such an impression from its review of the record. Plaintiff has been quite diligent in prosecuting his case and has evidently spent some effort familiarizing himself with the rules of civil procedure. Unfortunately, as is often the case with pro se litigants, many of plaintiff's impressions about the procedural and substantive law are misguided or fundamentally flawed. For the most part, it appears that the plaintiff has made a good faith effort to follow the rules of procedure (as he understands them) and to comply with the instructions and deadlines set forth in the Court's Orders.

■ On the other hand, by waiting until May 15—three days before the scheduled deposition—to place his motion for protective

order with the prison officials for mailing, the plaintiff must have realized that he was running the risk that the mailing might not reach counsel's office in advance of her travel to Waycross.[2] Indeed, after stating at the outset of the deposition that he had earlier placed the defendant "on notice" that he was seeking a protective order, Dep. at 2, the plaintiff acknowledged that he did not "know if you [defendant's attorney] received this yet." Dep. at 3. Plaintiff has nowhere explained why he didn't mail his motion earlier, which he could easily have done since the grounds for his objection to proceeding with the deposition were apparent from the moment he received the notice. By delaying his mailing until May 15, plaintiff created the strong possibility that counsel would not receive the notice in time to cancel her travel plans. Under these circumstances the magistrate judge properly required the plaintiff to pay fees and costs to the defendant. The fact that the plaintiff is indigent does not preclude such a sanction, for "[c]ourts can assess costs and monetary sanctions against IFP litigants" who abuse the discovery process. *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir.1989). While reasonable access to the courts is guaranteed to claimants who are unable to pay the filing fee, 28 U.S.C. § 1915, "once a pro se IFP litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure. These rules provide for sanctions for misconduct and for failure to comply with court orders." *Id.* It is not uncommon for courts to sanction attorneys who, in the face of a deposition notice, wait until eleventh hour before seeking a protective order, thereby causing the opposing party to incur unnecessary expense. Even a non-lawyer should realize that he should not expose the opposing party to unnecessary expense. The Court finds that it was proper to award costs

---

1. These motions were apparently never received by the Clerk of this Court. They are attached to defendant's motion to dismiss.

2. The record is silent as to exactly how much time elapsed between the plaintiff's receipt of the deposition notice and his submission of the motion for protective order to the prison officials for mailing. Defendant's counsel served the plaintiff with the deposition notice by regular mail on

May 3, 1995 (15 days before the deposition was scheduled). The institution presumably received the notice within three days, i.e., by Saturday, May 6, 1995. The record does not reflect when the notice was actually placed in the plaintiff's hands by prison personnel. Whatever the exact date, it seems very likely that over a week elapsed before plaintiff endeavored to notify counsel that he was seeking a protective order.

against the plaintiff under these circumstances.

■ But it is one thing to impose monetary sanctions against an IFP litigant and quite another to dismiss his case when he fails to pay. "Where monetary sanctions are imposed on an IFP litigant and the litigant comes forward showing a true inability to pay, it might be an abuse of discretion for the court then to dismiss for failure to pay." *Moon v. Newsome*, 863 F.2d at 838 (citations omitted). Unlike the plaintiff in *Moon*—who made no attempt to demonstrate that he was unable to pay—the plaintiff in this case has represented that he lacks the resources to pay the sanction and, because of his incarceration, it is impossible for him to obtain such funds. Pl.'s Objection to Order of Payment and Distribution, ¶ 7. The plaintiff represents that the limited deposits to his inmate account—which totaled just $115 during the first half of 1995—are not spent frivolously but are used to purchase the writing materials and stamps necessary to prosecute "his pending litigation." The defendant has not rebutted the plaintiff's representations regarding his indigency or his assertion that he lacks the funds to pay a monetary sanction exceeding $500.00.

If the plaintiff had a regular source of income into his inmate account (even of a limited nature) the Court would not hesitate to require the plaintiff to make periodic payments to the defendant. But plaintiff's income, in addition to being limited even for a prisoner, is of a very sporadic nature. Plaintiff's prison account transactions for the first half of 1995 show that he received $75 in February (which he spent before receiving the deposition notice), $20 in May, and another $20 in July. It is obvious that it would take the prisoner many years to pay the sanction, assuming he continued to receive money at the past rate.

There are certain instances where dismissal is appropriate for failure to pay a court-ordered sanction even though the party lacks the ability to do so. For example, the Court would not hesitate to dismiss where a party,

in bad faith and without any justification at all, obstructs discovery or the orderly progress of the case. Although the plaintiff in this case was properly sanctioned for not giving earlier notice of his motion for a protective order, the record does not reveal convincing evidence of bad faith or the deliberate flaunting of a court Order. The plaintiff's motion for a protective order reflects a misunderstanding of the law, not an utterly baseless objection to discovery interposed purely out of spite or malice. It is quite apparent from his numerous filings that the plaintiff feels that the defendants have wrongfully refused to provide him with discovery critical to the prosecution of this case, and he has traveled on the erroneous (but plausible) notion that he was absolutely entitled to this discovery from the defendants before submitting to a deposition. On these facts, the plaintiff's inability to pay the court-ordered sanction during the course of this litigation should not result in the outright dismissal of his case.[3]

The defendant, of course, is entitled to proceed with the deposition of the plaintiff. If the defendant prefers, any further deposition may be taken telephonically, Fed. R.Civ.P. 30(b)(7), or may be recorded by nonstenographic means in order to save costs. Fed.R.Civ.P. 30(b)(2). The defendant must submit to any scheduled deposition and will not be heard to complain that he is entitled to all of his discovery from the defendant before he can be required to undergo a deposition. No litigant has a right to dictate the course of discovery or demand that discovery proceed in the sequence he prefers. Fed. R.Civ.P. 26(d) (a party is entitled to proceed with discovery even though his opponent has yet to complete discovery). The plaintiff is cautioned that he must listen to the questions posed and answer them to the best of his ability. A deposition is not a time for the plaintiff to engage in argument or to read at length from pleadings or other documents filed of record. If the plaintiff again proves uncooperative in the taking of his deposition, his case will be subject to dismissal.

---

**3.** The sanction, however, stands, and the defendant may pursue recovery of the sanction by any

lawful means.

### III. PLAINTIFF'S MOTIONS TO COMPEL AND FOR PROTECTIVE ORDER

■ The plaintiff's motion to compel is **DENIED**. It is apparent that defendant Stephens, the Clerk of the Chatham County Superior Court, does not have in her possession the transcripts of the criminal proceedings that occurred in Dougherty County, Georgia. It is fruitless for the plaintiff to continue to demand that defendant Stephens produce documents which she does not have in her possession. A party to a civil case is required to produce only those documents "which are in the possession, custody or control of the party upon whom the request is served." Fed.R.Civ.P. 34(a). Assuming the criminal proceedings have even been transcribed, the transcripts are likely maintained in the county where the conviction arose.

For the reasons discussed above, the plaintiff's motion for a protective order is also **DENIED**.

### CONCLUSION

Defendant Strausner's motion for summary judgment is hereby **GRANTED**. Defendant Stephens' motion to dismiss is hereby **DENIED**. The plaintiff's motion for protective order and motion to compel are also **DENIED**.

**SO ORDERED.**