[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-13720

Non-Argument Calendar

_____

RUBIN YOUNG,
Write in Candidate for Miami Dade County Clerk of the
Circuit Court and Comptroller,

                                                      Plaintiff-Appellant,

*versus*

CLERK OF COURT FOR MIAMI-DADE COUNTY,
ANNETTE TADDEO,
Candidate for Clerk of Court in Miami-Dade County,
MAYOR, MIAMI-DADE COUNTY, FL,
SUPERVISOR, ELECTIONS FOR MIAMI-DADE COUNTY,

                                                      Defendants-Appellees.

———————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:24-cv-24260-RAR

———————————

Before JORDAN, LUCK, and KIDD, Circuit Judges.

PER CURIAM:

Rubin Young, proceeding *pro se*, appeals the district court's dismissal of his 42 U.S.C. § 1983 complaint for failure to comply with the orders of the court. After careful review, we affirm.

## I. BACKGROUND

On October 31, 2024, Young, a write-in candidate for Miami-Dade County Clerk of Court and Comptroller, filed a *pro se* complaint naming (1) Juan Fernandez Barquin, the Miami-Dade County Clerk of Court at that time; (2) Annette Taddeo, a fellow candidate for the Clerk of Court position; (3) Daniella Levine Cava, the mayor of Miami-Dade County; and (4) Christina White, the Miami-Dade County Supervisor of Elections (collectively, the "Defendants"). Young sought "to challenge the systematic discrimination that African Americans undergo in their pursuit and aspirations for public office in Miami-Dade County," and he generally alleged that the county's "unconstitutional filing fees and economic barriers" posed a "significant barrier to candidacy."

Young asserted that the Defendants either violated or failed to enforce "the Miami-Dade Home Rule Charter" and Florida election laws, and he set forth the following three claims for relief: (1) "Violation of Equal Protection," (2) "Violation of Voting Rights Act," and (3) "Fraudulent Election Practices." With these claims, Young realleged and reincorporated all preceding paragraphs of his complaint without identifying which Defendant was named in each cause of action.

The same day, the district court, acting on its own accord, dismissed Young's complaint without prejudice. The court concluded that Young's complaint was a shotgun pleading because it relied on "conclusory and vague allegations" and included "very few facts." It explained that Young "merely associate[d] each [Defendant] with a legal conclusion of an alleged violation of the law without stating *which* law each Defendant violated or *how* each Defendant allegedly violated the unspecified law." It also noted the contradictory nature of Young's "base assertions," as he complained about the absence of his name from the ballot while simultaneously claiming to be a write-in candidate. The court stressed that if Young's assertions were not contradictory, he "need[ed] to explain why, and explain why [they] plausibly violate[d] a specified law."

The court permitted leave to amend and advised Young that he must "'separat[e] into a different count each cause of action or claim for relief,' and make it clear, with specificity, how the facts in his case connect to each cause of action." The court suggested

including "a clearer narrative of what happened" with a description of the Defendants' roles and "a general timeline of events." Finally, it warned Young that his amended complaint must "cure the deficiencies identified . . . to state a claim for relief," and that failure to timely do so would result in the dismissal of his case.

The following week, Young filed an amended complaint, which named the same Defendants and was based on the same general allegations. He separated his factual allegations into sections labeled (1) "Discriminatory Filing Fees," (2) "Home Rule Charter Violations," (3) "Citizenship Verification Failures," (4) "Election Interference," and (5) "Election Oversight Failures."

He alleged that, in 2024, Miami-Dade County implemented "exorbitantly high" filing fees for Clerk of Court candidates, which acted as a candidacy barrier that disproportionately affected poor and minority candidates. He further alleged that Barquin failed to comply with the Miami-Dade Home Rule Charter's mandatory leave of absence provision and that Taddeo should be disqualified from the election because she failed to provide proof of her citizenship. He additionally alleged that Mayor Cava had engaged in election interference because she provided financial support to Taddeo's campaign and distributed campaign materials that violated state and federal election laws. Finally, Young alleged that White had been derelict in her duty of enforcing Florida election laws.

Young set forth two causes of action against all of the Defendants. First, Young alleged that the "Defendants' conduct,

policies, and administrative actions" violated the Equal Protection Clause by implementing "exorbitantly high" filing fees and other requirements that were not applied uniformly and disproportionately affected poor and minority candidates. Second, Young alleged that the "Defendants" had "disenfranchised minority voters and candidates" by violating the Voting Rights Act "[t]hrough their direct actions and omissions." Young also alleged that "the imposition of prohibitive filing fees" and the Defendants' unwillingness to enforce election laws denied minorities of the rights afforded to them under the Act.

The district court dismissed Young's case without prejudice because he failed to follow its previous order. It stated that Young's most apparent change in his amended complaint was the increased use of passive voice, which made understanding his allegations more difficult. It added that the amended complaint "remain[ed] full of conclusory and vague statements about various laws that ha[d] been violated without explaining how those laws were violated, when they were violated, or who violated them." The court noted how the "Discriminatory Filing Fees" section failed to mention the Defendants, state who was responsible for the allegedly discriminatory fees, or explain how the fees were violative of any legal principle. Similarly, the court found that the amended complaint failed to explain how the filing fee structure was racially discriminatory and made conclusory allegations regarding violations of the Voting Rights Act.

6                    Opinion of the Court                    24-13720

The court further noted that its previous order specifically advised that Young would need to address in his amended complaint "how [Mayor] Cava financially supported Taddeo, how such alleged financial support would violate the electoral process, or how any of the cited provisions appl[ied] to the electoral process or any alleged interference or financial support." However, Young's explanation of the alleged "Election Interference" was nearly identical in both of his complaints, so his amended complaint "answer[ed] none of these questions." This appeal followed.

## II. STANDARD OF REVIEW

We review the dismissal of an action for failure to comply with the rules of the court for abuse of discretion and will not disturb the decision so long as it falls within the court's "range of choice . . . and is not influenced by any mistake of law." *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337 (11th Cir. 2005) (quotation marks omitted).

## III. DISCUSSION

A district court's "power to dismiss a cause is an inherent aspect of its authority to enforce its orders and insure prompt disposition of law suits." *Dynes v. Army Air Force Exch. Serv.*, 720 F.2d 1495, 1499 (11th Cir. 1983). As such, a court may *sua sponte* dismiss a case pursuant to either Federal Rule of Civil Procedure 41(b), for failure to comply with an order, or its inherent power to manage its docket. *See Betty K*, 432 F.3d at 1337.

On appeal, Young emphasizes his lifelong pursuit of election reform and reiterates his belief that the Defendants' actions

24-13720              Opinion of the Court                    7

violated his civil rights and federal law. Regarding the dismissal of his complaint, he argues that the district court overlooked the "foundational principle" that *pro se* pleadings are scrutinized with "less rigor" and interpreted "to raise the strongest arguments they suggest." He maintains that even "inartfully pleaded" *pro se* complaints must survive dismissal unless "it appears 'beyond doubt'" that "no set of facts" could justify a claim for relief. He further argues that procedural dismissal of his claims "undercuts the very purpose of the[] civil rights protections" addressed in his complaint.

Young is correct that we hold *pro se* filings to a less stringent standard than those filed by counsel. *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014). However, *pro se* litigants are still "subject to the relevant law and rules of court," *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989), and "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action," *Campbell*, 760 F.3d at 1168–69.

We conclude that Young's failure to follow the district court's directions was a sufficient basis to dismiss his complaint. When dismissing Young's initial complaint as an impermissible shotgun pleading, the court specifically identified the issues with his filing and explained how Young could correctly plead his allegations in an amended complaint. The court also specifically warned Young that failure to correct these deficiencies would result in dismissal of his case.

8                    Opinion of the Court                    24-13720

Despite these explicit instructions and warnings, Young's amended complaint was filled with conclusory allegations and vague requests for relief. *See Moon*, 863 F.2d at 837 ("While dismissal is an extraordinary remedy, dismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion."). Young's new causes of action indicated that all Defendants were equally culpable for all purported illegal acts, and he did not connect any individual to a specific violation of the law. Young also failed to answer many of the open questions the district court identified in its order permitting leave to amend, including when the alleged unlawful actions occurred, how the filing fees were racially discriminatory, how any of Miami-Dade County's candidacy requirements were not uniformly applied, or how Mayor Cava's support for another candidate was improper.

Because Young failed to follow the court's order despite being forewarned of the possibility of dismissal, we conclude that the court did not abuse its discretion in dismissing his complaint without prejudice. *Id.*; *see also Dynes*, 720 F.2d at 1499 (dismissal without prejudice generally does not constitute an abuse of discretion).

24-13720                 Opinion of the Court                    9

## IV. CONCLUSION

For the reasons stated above, we **AFFIRM** the dismissal of Young's complaint without prejudice.[1]

---

[1] Young has also filed several motions with our Court. His motion to vacate election certification, stay office pending appeal, and compel compliance with state and federal law is DENIED. His requests to waive oral argument are GRANTED. His motion for leave to supplement the record and request for judicial notice is DENIED.